# SCHEDULE E

SCHEDULE "E"
ESTATE TAKEN

The estate taken is a temporary, assignable easement beginning on the date possession is granted to the United States and ending 180 days later, consisting of the right of the United States, its agents, contractors, and assigns to enter in, on, over and across the land described in Schedule "C" to survey, make borings, and conduct other investigatory work for the purposes described in Schedule "B" and to access adjacent lands where the United States has a right of entry or other property interest; including the right to trim or remove any vegetative or structural obstacles that interfere with said work; reserving to the landowners, their successors and assigns all right, title, and privileges as may be used and enjoyed without interfering with or abridging the rights hereby acquired; subject to minerals and rights appurtenant thereto, and to existing easements for public roads and highways, public utilities, railroads and pipelines.

# SCHEDULE A

SCHEDULE "A"
AUTHORITY FOR THE TAKING


The property is taken under and in accordance with the Act of Congress approved on February 26, 1931, as 46 Stat. 1421 and codified at 40 U.S.C. Section 3114, and the Act of Congress approved August 1, 1888, as 25 Stat. 357 and codified at 40 U.S.C. Section 3113, and any acts supplementary thereto and amendatory thereof; the Act of Congress approved September 30, 1996, as Public Law 104-208, Division C, Section 102, Stat. 3009-546, 3009-554, as amended and codified at 8 U.S.C. Section 1103(b) & note; and the Act of Congress approved October 4, 2006, as Public Law 109-295, Title II, 120 Stat. 1355, which appropriated the funds which shall be used for the taking.

# SCHEDULE F

SCHEDULE "F"
ESTIMATE OF JUST COMPENSATION


The sum estimated as just compensation for the land being taken is ONE HUNDRED DOLLARS AND NO/100 ($100.00), to be deposited herewith in the registry of said Court for the use and benefit of the persons entitled thereto; and, an additional sum determined at the conclusion of the temporary estate described in Schedule "E" to constitute actual damages, if any.

THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS - MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | AFFIDAVIT IN SUPPORT OF MOTION |
| | ) | |
| vs. | ) | FOR IMMEDIATE POSSESSION |
| | ) | |
| 3.25 ACRES OF LAND, MORE OR LESS, | ) | |
| | ) | |
| SITUATE IN HIDALGO COUNTY, STATE OF TEXAS; | ) | |
| | ) | |
| AND S & S STORAGE, LLC, ET AL. | ) | CIVIL NO. |
| | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

I,   Gregory A. Gephart  , hereby declare as follows:

1.    I am employed as  SBI Deputy Program Manager of Tactical
Infrastructure  with U.S. Customs and Border Protection.  I make this
declaration based on my personal knowledge of the matters recited, or based
upon information available to me from the files maintained by my office in
this matter.

2.    The United States has a vital interest in controlling its
international borders.  As part of the ongoing effort to secure the borders
and reduce illegal immigration, Congress has ordered the construction of
various types of fencing, additional physical barriers, roads, lighting, and
related infrastructure along the United States' southwestern border.
Consolidated Appropriations Act, 2008, Pub. L. 110-161, 121 Stat. 1844
(2007).  This act, amending section 102 of the Illegal Immigration Reform and
Immigrant Responsibility Act of 1996, also directs the Secretary of Homeland
Security to identify locations where such infrastructure would be most

practical and effective in deterring smuggling and illegal entry and to complete construction in those locations no later than December 31, 2008.

3.   The United States requires immediate access to the subject land as a preliminary step toward meeting this congressional mandate.

4.   Prior to the construction described in paragraph 2, the United States must identify potential sites for infrastructure, access roads, and staging and work areas needed for construction; conduct investigatory work, such as environmental, appraisal, archaeological, survey, and other preliminary testing, to determine each site's suitability; make final determinations as to the type and location of infrastructure to be built, if any; and acquire any property interests needed for construction.  Only after these steps have been completed can the United States begin construction.

5.   The subject land is situated directly upon the international border.

6.   The subject land has been identified as a potential site for the construction of the infrastructure described in paragraph 2 or use as an access road or staging or work area.

7.   The United States requires physical access to the subject land to conduct the investigatory work discussed in paragraph 4 to determine the suitability of the site for the construction of the infrastructure described in paragraph 2 or use as an access road or staging or work area.  This determination cannot be made without physical access to the subject land.

8.   The interest taken in the subject land is a temporary right of entry that is minimally intrusive and reserves to the landowner all rights and possessory interests that do not interfere with the government's access for investigatory work.

9.   The sum estimated as just compensation for this temporary access is One Hundred Dollars ($100.00), which was deposited in the registry of the

court for the use and benefit of the persons entitled thereto based upon the Declaration of Taking for this case.

I declare the above information is true and correct to the best of my knowledge, information, and belief, under penalty of perjury.  I further declare that this Declaration was executed on this  18th  day of  Jan , 2008, in  Washington, D.C.

Gregory A. Gephart